## STUTZ et al. v. BUREAU OF NARCOTICS OF DEPARTMENT OF TREASURY OF UNITED STATES et al.

## SCHWEIN et al. v. SAME.

### Nos. 4926, 4938.

District Court, N. D. California, N. D.

Aug. 28, 1944.

Devlin & Devlin & Diepenbrock and Horace B. Wulff, all of Sacramento, Cal., for plaintiffs.

Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., Emmet J. Seawell, Asst. U. S. Atty., of Sacramento, Cal., and B. T. Mitchell, Asst. Chief Counsel, U. S. Bureau of Narcotics, of Washington, D. C., for defendants.

Before MATHEWS, Circuit Judge, and WELSH and GOODMAN, District Judges.

WELSH, District Judge.

These are companion cases, involving the same issues and heard together upon the plaintiffs' applications for preliminary injunction and the defendants' motions to dismiss.

The plaintiffs are growers within the State of California of the blue seeded poppy of the species known botanically as Papaver Somniferum. They are cultivating these poppies for their seed, an edible food product commercially profitable to the producer. Other parts of this species of poppy are a source of opium and opium derivatives, including morphine. The fluid obtained through incisions cut in the pod of these poppies yields what is called the raw opium.

For the reason that the poppies grown by the plaintiffs are of the species Papaver Somniferum, and are the source of opium and opium derivatives, their production within the United States is prohibited by the terms of the Opium Poppy Control Act of 1942, 56 Stat. 1045, 21 U.S.C.A. § 188 et seq., save under license issued by the Secretary of the Treasury or his designated agent.

Section 3 of the Opium Poppy Control Act provides:

"It shall be unlawful for any person who is not the holder of a license authorizing him to produce the opium poppy, duly issued to him by the Secretary of the Treasury in accordance with the provisions of this Act, to produce the opium poppy, or to permit the production of the opium poppy in or upon any place owned, occupied, used, or controlled by him."

Section 2(c) of the Act defines the term "opium poppy" to include—

"* * * the plant Papaver somniferum, any other plant which is the source of opium or opium products, and any part of any such plant."

Section 6(d) of the Act provides that:

"All licenses issued under this Act shall be limited to such number, localities, and areas as the Secretary of the Treasury shall determine to be appropriate to supply the medical and scientific needs of the United States for opium or opium products, with due regard to provisions for reasonable reserves: * * *."

The plaintiffs have no federal license authorizing them to grow the opium poppy. Facing the threatened loss of their growing crop of poppies by government seizure, forfeiture and destruction—Section 8 of the Act calling for these steps whenever opium poppies are produced without license—the plaintiffs seek by these suits to enjoin the Bureau of Narcotics and the United States government officials charged with enforcement of the Act from interfering in any way with the growing and production of their crop of poppies. Their position is that the Opium Poppy Control Act, as applied to them, is unconstitutional; that it is an exercise by the United States of regulatory powers over the production of an agricultural commodity, the poppy seed, within a state; that such powers are reserved exclusively to the states by the 10th Amendment to the Constitution.

■ The Opium Poppy Control Act does not purport to regulate the production of an agricultural crop. The Act is directed to the growth of opium yielding poppy plants within the United States as the source, not of an edible food product, but rather of raw opium. Its effect upon the production of the poppy seed is incidental only to its operation on a plant which produces both narcotic drug and edible seed.

The validity of the Act does not depend upon the finding of constitutional authority in Congress to regulate a food product, but upon its power to regulate the supply source of raw opium.

The primary derivation of congressional authority to exercise control by federal legislation over the cultivation of the opium poppy is stated in the declared purpose of the Opium Poppy Control Act—

"* * * (1) to discharge more effectively the obligations of the United States under the International Opium Convention of 1912, and the Convention for Limiting the Manufacture and Regulating the Distribution of Narcotic Drugs of 1931; * *."

The preamble to the International Opium Convention of 1912 (Treaty Series No. 612; 38 Stat.1912, 1930), to which the United States was a signatory, expresses the objectives sought to be attained by that treaty in stating that the participating powers—

"* * * resolved to pursue progressive suppression of the abuse of opium, morphine, cocaine, as well as drugs prepared or derived from these substances giving rise or which may give rise to analogous abuses; taking into consideration the necessity and the mutual profit of an international understanding on this point; being convinced that they will meet in this humanitarian effort the unanimous adhesion of all the nations interested, have resolved to conclude a Convention for this purpose * * *."

One of the methods agreed upon by the International Opium Convention of 1912 to accomplish the eradication of the opium evil was through the exercise of control over the production and distribution of raw opium, defined in Chapter I of the Convention as:

"* * * the spontaneously coagulated sap obtained from capsules of the soporific poppy (Papaver somniferum), and which shall not have been subjected to any but the processes necessary to the packing and the transportation thereof. * * *"

Article I of Chapter I of the Convention provides that:

"The Contracting Powers shall enact efficacious laws or regulations for the control of the production and distribution of raw opium, unless existing laws or regulations have already regulated the matter."

The later Convention for Limiting the Manufacture and Regulating the Distribu-

tion of Narcotic Drugs of 1931 (Treaty Series No. 863; 48 Stat. 1543), to which the United States was signatory, was in furtherance of the same objective as the International Opium Convention of 1912—the eradication of the drug evil, "by rendering effective by international agreement the limitation of the manufacture of narcotic drugs to the world's legitimate requirements for medical and scientific purposes and by regulating their distribution. * * *"

■ The competency of the United States to enter into treaty stipulations with foreign powers designed to establish, through appropriate legislation, an internationally effective system of control over the production and distribution of habit forming drugs is not questioned. The obligations of the United States incurred as a party to the two Conventions heretofore mentioned were lawfully undertaken in the proper exercise of its treaty making power. And Congress is constitutionally empowered to enact whatever legislation is necessary and proper for carrying into execution the treaty making power of the United States. U.S.Const. Art. I, § 8.

In Neely v. Henkel, 180 U.S. 109, 121, 21 S.Ct. 302, 306, 45 L.Ed. 448, the rule is stated thus:

"The power of Congress to make all laws necessary and proper for carrying into execution as well the powers enumerated in § 8 of article I. of the Constitution as all others vested in the government of the United States, or in any department or the officers thereof, includes the power to enact such legislation as is appropriate to give efficacy to any stipulations which it is competent for the President by and with the advice and consent of the Senate to insert in a treaty with a foreign power."

■ By the terms of the International Opium Convention of 1912, the United States obligated itself to control the production and distribution of raw opium. The provisions of the Opium Poppy Control Act express the determination of Congress that effective control of opium production and distribution necessitates legislation limiting the proximate source of yield of the raw opium—the opium poppy—whatever the purpose for which its cultivation is undertaken. The constitutionality of the measures thus chosen by Congress to give efficacy to the treaty stipulations of the Convention is not dependent upon the

wisdom or success of the choice. Nor is it significant that the Conventions contain no stipulation expressly committing the signatory powers to the obligation of exercising control over the cultivation of the opium poppy. The power of Congress to enact such legislation as is necessary or proper to carry into execution powers vested by the Constitution in the United States, of which the treaty making power is one, includes the right to employ any legislative measures appropriately adapted to the effective exercise of those powers. Juilliard v. Greenman, 110 U.S. 421, 4 S.Ct. 122, 28 L.Ed. 204. So long as a rationally sound basis exists for the congressional determination that particular legislation is appropriately related to the discharge of constitutional powers, the validity of such legislation is unassailable.

■ It is apparent to this Court that efficacious control over the production and distribution of raw opium can well depend upon the limitation of the cultivation of the opium poppy within the United States to legitimate medical and scientific needs only. The appropriate relationship of the means adopted by Congress to the ends thereby sought to be attained is evident. The opium poppy is the immediate source from which the raw opium is obtained; its cultivation may be undertaken without difficulty, without detection, and for illicit purposes even under the guise of legitimate pretenses; the process of extracting the raw opium from the opium poppy is a simple one; the growth of the opium poppy, wherever undertaken, can reasonably be said to afford attractiveness to those seeking a source of opium supply either for the satisfaction of their own cravings or for the profits offered by the contraband market; and this attractiveness can be expected to increase as suppression of the drug evil becomes progressively more effective and other sources of drug supply become more scarce. In view of these considerations alone, this court is fully satisfied with the appropriate relativity of measures limiting the cultivation of the opium poppy to the objectives of the treaty stipulation to control the production and distribution of raw opium.

We hold the Opium Poppy Control Act of 1942 constitutional.

The applications for injunction are denied and the defendants' motions to dismiss are granted.